**Charles H. List, Administrator of the Estate of Barbara List, Deceased, Plaintiff-Appellant, v. Dan O'Connor, Rockford Motorcycle Club, Don C. Butterfield, Defendants, and Earl F. Elliott and Rockford Park District, a Municipal Corporation, Defendants-Appellees.**

**Gen. No. 11,242.**

Second District, Second Division.

May 6, 1959.

Released for publication May 22, 1959.

Smith & Sype and Frederick F. Kalivoda, of Rockford (Frederick F. Kalivoda, of counsel) for plaintiff-appellant.

Stanley H. Guyer and Edward J. Enichen, of Rockford, for defendants-appellees.

400

PRESIDING JUSTICE WRIGHT delivered the opinion of the court.

Plaintiff, Charles H. List, as administrator of the estate of Barbara List, deceased, commenced this action in the Circuit Court of Winnebago County, to recover damages for the wrongful death of Barbara List.

The amended complaint filed herein by the plaintiff as to these defendants consists of four counts, numbered VII, VIII, IX, and X.

Count VII alleges in substance that the defendant, Rockford Park District, a voluntarily organized municipal corporation, by and through defendant, Earl F. Elliott, its agent and servant, acting in a governmental capacity, authorized the Rockford Motorcycle Club, Inc., a corporation, or Don C. Butterfield, or both, to hold motorcycle races on the frozen surface of Levings Lake, which is owned and operated by said Park District; that the defendants negligently authorized and permitted said races to be run on said lake without giving any warning; without erecting barriers; without requiring any safety devices to stop an uncontrolled motorcycle, or without requiring or taking any measures for the safety of others lawfully occupying and using said lake; that the defendants knew or should have known the inherently dangerous conditions arising from and the foreseeable consequences in permitting said races to be run on said lake; that a motorcycle being operated in one of the races went out of control and left the racing area and ran into the decedent, who was lawfully skating on said lake and who was in the exercise of due care for her own safety, and that as a direct and proximate result of the negligent acts of the defendants and the collision aforesaid, the decedent sustained injuries from which she died.

401

The allegations of count VIII are substantially the same as those in count VII, except it is alleged in count VIII that the defendants were guilty of wilful and wanton misconduct in permitting said races to be held on said lake without giving warning; without erecting barriers; without requiring any safety devices to stop an uncontrolled motorcycle or without requiring or taking any measures for the safety of others lawfully occupying said lake, and further alleges that the deceased was not guilty of any wilful and wanton misconduct contributing to her injury and death.

Counts IX and X contain in substance the same allegations as counts VII and VIII respectively, except in these counts it is alleged that the defendants were acting in a ministerial or proprietary capacity in authorizing the motorcycle races to be held.

On motion of the defendants, the trial court struck and dismissed all four counts of the amended complaint and entered judgment dismissing all of said counts at plaintiff's cost and that plaintiff take nothing by his suit and that the defendants go hence without day. From this judgment, plaintiff appeals.

The first question to be determined in passing on this appeal is whether or not the Rockford Park District, by and through its agent and servant, was acting in a governmental or in a ministerial or proprietary capacity in permitting the motorcycle races to be run on the frozen surface of Levings Lake. While the courts of last resort in this country are not in accord in their opinion on this question, we believe that the weight of authority is to the effect that the maintenance and operation of parks, playgrounds, swimming pools, and the like by a municipal corporation are governmental functions undertaken by the municipal corporation strictly for the public benefit as distinguished from a corporate benefit. In a well considered opinion, our Supreme Court in Geb-

402

hardt v. Village of LaGrange Park, 354 Ill. 234, held that the operation of a swimming pool by a municipal corporation is a governmental function. On page 236 of the opinion, the court said:

"This brings us to the question, then, whether the maintenance of a swimming pool is a governmental or proprietary function. If it be the former, the doctrine of *respondeat superior* has no application and the village may not be held liable for damages arising out of the negligence of its servants in the discharge of that function. This rule is generally accepted. (Roumbos v. City of Chicago, 332 Ill. 70, and cases there cited.) Indeed, counsel for defendant in error do not contend otherwise. If the function is a corporate or proprietary one, as it is sometimes called, the doctrine of *respondeat superior* does apply, and the municipality is liable for damages arising out the negligence of its servants in the discharge of that function."

On pages 238 and 239 of the opinion, the court said:

"If the duty involves a general public benefit not in the nature of a corporate or business undertaking for the corporate benefit and interest of the municipality, the function is governmental whether the duty be directly imposed upon the city or is permissive—that is, one voluntarily assumed. A bathing beach or swimming pool is maintained under powers granted to the city or village and as an instrument for the general public health, recreation and exercise. It is not imposed on the municipality but is optional with it. That fact alone, however, may not be said to determine whether in maintaining such swimming pool the municipality acts in a governmental or proprietary capacity. The nature and effect of the function discharged must be examined to determine that question. (Bisbing v. Asbury Park, supra.) Such function in nowise partakes of the nature of a corporate business or undertaking for profit but is by its nature

403

a public benefit. The municipal purpose in providing such means of recreation and health differs widely from that found in conducting a business enterprise for private gain."

In the case of Love v. Glencoe Park District, 270 Ill. App. 117, the Appellate Court of the First District had occasion to consider the question here involved. In that case a suit was instituted, Love as administrator, against Glencoe Park District, for damages resulting from the death of the deceased by drowning because of alleged negligence on the part of the defendant through its maintenance and operation of a bathing beach. On page 120 of the opinion, the court said:

"The park district created under the act already referred to exercises functions governmental in their character inasmuch as they are exercised for the benefit of the general public. There is some conflict in the decisions but we are of the opinion that the general rule is in conformity with that expressed by the courts of this State. The great weight of authority appears to hold that the members of the park board, said board having been created as it was for the use of the general public, are not liable individually, nor is the park district. (Cases cited.)

"The fact that the public was required to pay a certain fee or charge in order to avail itself of the use and privilege of the park does not change the character of the park district as a governmental agency. Carstens v. City of Wood River, 344 Ill. 319. So long as the fee is reasonable, it may be charged lawfully in order to provide and maintain various instrumentalities used by the park district for the benefit of the public."

The distinction between a governmental function and a private or a corporate function is not well defined but is vague and indefinite. It has been said

that all that can be done with safety is to determine each case as it arises. In determining whether or not the act is governmental or proprietary, the inquiry must be whether the particular agent or servant for whose acts of negligence it is sought to hold the municipal corporation liable is its agent or servant for the performance of a public duty imposed by law, or merely for carrying out of a private function, which is for the municipal corporation's special benefit or advantage. Roumbos v. Chicago, 332 Ill. 70.

In the instant case, the Rockford Park District was being operated for the benefit of the general public and its enjoyment and the use of its recreation facilities were not limited to the particular park district but were for the benefit, health and amusement of the public generally. In fact, the plaintiff alleges in paragraph 6 of both counts VII and VIII that the park district in permitting the motorcycle races to be held was performing a governmental function.

We conclude that the defendant, Rockford Park District, by and through defendant, Earl F. Elliott, its agent and servant, was acting in a governmental capacity in authorizing the holding of the motorcycle races.

We will next consider the question presented as to whether or not defendant, Rockford Park District, and defendant, Earl F. Elliott, its agent and servant, or either of them, can be held legally liable for an injury resulting in death such as the one involved in this proceeding.

■ It has been stated that the doctrine of governmental immunity presently afforded municipal corporations was conceived in England and based upon the theory "that the King can do no wrong." We believe that the rule is based upon a broader and more humane theory of government. The purpose of the state in the creation of park districts is primarily to

provide for the health, welfare, entertainment and recreation of the public. The state could operate without such agencies, but without them the loss would be that of the public. Such agencies are not necessary to carry on the functions of government, but their existence is of great benefit to the public. Accidents must, necessarily, happen because of their operation, but the great good to the greatest number greatly outweighs the hardships to the few. The health and recreational benefits derived by the general public is of first consideration and it was evidently this fact which influenced legislators in the creation of park districts similar to the one involved in this case. Love v. Glencoe Park District, supra.

In similar factual situations as presented in the instant case some foreign jurisdictions have held municipal corporations liable for the negligent acts of its agents in the conduct of governmental functions, but the reviewing courts of Illinois have neither as a matter of principle or of public policy seen fit to adopt and apply the maximum of respondeat superior in such cases; but on the contrary, the overwhelming weight of authority in Illinois is to the effect that municipal corporations are not liable for negligence when performing functions governmental in nature unless such right of action is expressly given. (Gebhardt v. Village of LaGrange, supra; Love v. Glencoe Park District, supra.)

The plaintiff in this case in support of his contention that the park district is liable relies heavily on the cases of Johnston v. Chicago, 258 Ill. 494, and People v. Chicago, 256 Ill. 558. We do not believe that the rulings in those cases are in conflict with the conclusions reached in the instant case. In Johnston v. Chicago, supra, the court held that the city was engaged in a ministerial act at the time of the injury sued for. At page 501 of the opinion, the court said:

"The conveyance of books from one library building to another, by means of an automobile, along the public highways by employees of the city is plainly a ministerial duty. For that reason, if for no other, we hold the city liable in this case." In arriving at that conclusion the Supreme Court determined that the act of conveying books was for the convenience of the municipality and not necessarily for the general public. In People v. Chicago, supra, the court held that the Woman's Ten Hour Law applied to a hospital as well as to an individual and that a municipality could be prosecuted criminally for the violation of said law. It is our opinion that count VII fails to state a cause of action against defendant, Rockford Park District.

Since we hold that the defendant, Rockford Park District, is not liable under the allegations set forth in count VII of the amended complaint, it follows that the defendant, Earl F. Elliott, who was an agent or servant of the park district, is not personally liable. Love v. Glencoe Park District, supra. The defendant, Elliott, was acting in a ministerial capacity as a liaison between the Rockford Park District and the Motorcycle Club and it is recognized in the law that such a person in his official capacity must make decisions which unbeknown to him may ultimately result in injury to innocent people. Taylor v. Berwyn, City of, 372 Ill. 124; Rafel v. City of Elmhurst, 10 Ill.App.2d 64.

In most park districts various sporting events are held such as golf matches, baseball games, swimming, horse back riding, etc. A park director or an employee might easily foresee that someone would be injured while participating in such sports, and we do not believe that the law contemplates liability in such instances. A public officer whose functions are judicial or quasi judicial cannot be called upon to respond

in damages for the honest exercise of his judgment within his jurisdiction however erroneous his judgment may be. They may judge wrongly, and so may a court or other tribunal but the party complaining can have no action when such officers act in good faith or in the line of what they think is honestly their duty. McCormick v. Burt, 95 Ill. 262.

Count VIII of the amended complaint contains identically the same allegations as count VII thereof except the acts of negligence alleged in count VII are characterized in count VIII as being wilful and wanton, but the plaintiff did not in the trial court nor does he in this court attempt to predicate liability upon the theory that the defendants were guilty of any wilful, wanton or malicious conduct in permitting the motorcycle races to be run, but on the contrary relies solely on the theory that the defendants were guilty of negligence in permitting the races. Plaintiff in a statement of his theory of the case set forth at the outset of his brief says:

"The Complaint in two counts alleged that defendants gave permission for the running of motorcycle races on defendant Rockford Park District's frozen lake occupied by the decedent and others and further alleged defendants' negligence in permitting such races without providing or requiring warning, protection or safeguards for the public using the lake.

"One count charged the defendants acted in their governmental capacity. The other count charged the defendants acted in their ministerial, corporate or private capacity."

Plaintiff's brief and argument is silent as to any contention that defendants were guilty of any wilful, wanton or malicious acts in permitting the motorcycle races to be run, and is void of any contention that defendants are liable on the theory that the acts were wilful, wanton or malicious. Such being

the case, these questions are not for consideration by this court.

Since we hold that the defendant, Rockford Park District, acting by and through defendant, Earl F. Elliott, its agent and servant, was performing a governmental function and not a ministerial function in permitting the Motorcycle Club, a corporation, or Don C. Butterfield or both, to hold the motorcycle races on the frozen surface of Levings Lake, the trial court properly dismissed counts IX and X of the amended complaint.

The judgment of the Circuit Court of Winnebago County is affirmed.

Affirmed.

SOLFISBURG and CROW, JJ., concur.